# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### November 7, 2018 Session

## JEFFREY HEATLEY ET AL. v. DAVID G. GAITHER ET AL.

### Appeal from the Chancery Court for Putnam County
### No. 2014-14  Ronald Thurman, Chancellor

_____

### No. M2018-00461-COA-R3-CV

_____

Plaintiffs filed suit against the owners of a neighboring property, claiming that wastewater from the neighbors' septic system was pooling onto the plaintiffs' property. The defendants moved for summary judgment on two grounds: (1) their use of the septic system was authorized by an implied easement from the previous common ownership of the two properties; and (2) they did not breach any duty to the plaintiffs because they were unaware that the septic tank existed.  In response, the plaintiffs argued that, after the septic tank's discovery, the defendants continued to use it even though it was failing. The plaintiffs also moved to amend their complaint to add claims for gross negligence, nuisance, and continuing trespass.  The trial court granted summary judgment for the defendants on all claims and denied the motion to amend the complaint.  On appeal, we affirm the grant of summary judgment on trespass but reverse the grant of summary judgment on negligence.  In light of our decision on the summary judgment motion, we also vacate the denial of the motion to amend the complaint.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part; Affirmed in Part; Vacated in Part; and Case Remanded

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S. and ANDY J. BENNETT, J., joined.

G. Kline Preston IV, Nashville, Tennessee, for the appellants, Jeffrey Heatley and the Estate of Kathryn Heatley.

Douglas L. Dunn, Knoxville, Tennessee, for the appellees, David G. Gaither, Patricia W. Gaither, Gaither's Inc., and Generations-Gaither's Inc.

## OPINION

## I.

### A.

This is a dispute between adjoining property owners, the Heatleys and the Gaithers, over damage allegedly caused by a leaking septic tank. Most of the relevant facts are undisputed.[1] In 1968, Melvin Malone and his wife, Anna Rose Malone, owned the two properties as one parcel. Later, the Malones constructed a house on the property and installed an underground sewage disposal system that included two septic tanks.

Almost thirty years later, the Malones subdivided their property. As a result, the Malone house was located on what would become the Gaither property and part of the house's septic system was located underneath what would become the Heatley property.

According to their complaint, Jeffrey and Kathryn Heatley raised and trained specialty service dogs. Because the area around the Heatleys' dog kennel was often damp and muddy, they built a new kennel in a different location on their property. But the dampness problems persisted.

After purchasing the neighboring property, David and Patricia Gaither renovated the old Malone house for use as a mental health adult supportive residential facility. In the fall of 2011, with the approval of the Tennessee Department of Mental Health, Skylar House opened for business.

Jim Campbell, director of operations for Skylar House, supervised the renovations of the old Malone house. During the process, he obtained drawings of the septic system for Skylar House from the Tennessee Department of Environment and Conservation ("TDEC"). The drawings, dated 1999 and 2000, showed only one septic tank. Before October 30, 2013, neither Mr. Gaither nor Mr. Campbell was aware that Skylar House was also connected to a second septic tank on the Heatley property.

In October 2013, the Heatleys hired a contractor to re-grade the area around the new kennel. During that process, the contractor uncovered a clay pipe leading to the Gaither property. On October 30, Mr. Heatley notified David Gaither about the discovery, which prompted Mr. Gaither to investigate. Mr. Campbell discovered that the clay pipe led to a septic tank on the Heatley property. He observed water flowing into the

---

[1] Except as otherwise indicated, the facts are taken from the defendants' statement of undisputed material facts. In some instances, the facts are undisputed only for the purposes of ruling on the motion for summary judgment. *See* Tenn. R. Civ. P. 56.03.

2

tank.  Based on his observations, he determined that the septic tank on the Heatley property was permanently attached to Skylar House and had been for years.

Mr. Campbell arranged to have the newly discovered tank emptied on November 4.  And he worked closely with TDEC on a plan to disconnect the tank from Skylar House.  *See* Tenn. Code Ann. § 68-221-409(a) (2013) ("Any person proposing to construct, alter, extend or repair subsurface sewage disposal systems . . . shall secure a permit . . . .").  TDEC supervised implementation of the approved plan.  As part of the plan, the septic line between Skylar House and the tank on the Heatley property was severed and sealed on or about February 21, 2014.

B.

Before the tank was permanently disconnected, the Heatleys[2] filed suit against the Gaithers and two related entities[3] (collectively, the "Gaithers") in the Chancery Court for Putnam County, Tennessee, for negligence, negligence per se, and nuisance.  According to the complaint, after the septic tank was emptied, "water rushed into the tank from the line leading to the Gaither property."  Because the field lines attached to the tank were failing, wastewater from Skylar House allegedly pooled onto the surface of the Heatley property.  The Heatleys claimed that, although the Gaithers were aware of the problem, they refused to "assure the Heatleys that the tank would be disconnected and re-pumped to stop the discharge of sewage onto the Heatley property."

Later, with the permission of the court, the Heatleys filed an amended complaint.  The Heatleys dropped the nuisance claim against the Gaithers, choosing instead to pursue claims for negligence, negligence per se, and trespass.  According to the amended complaint, the Gaithers breached their duty of care by failing to maintain the septic system or to correct a known sewage discharge.  And they committed trespass by knowingly and intentionally continuing to transfer their sewage onto the Heatley property without consent.

The Gaithers moved for summary judgment.  Two of the theories asserted are relevant to this appeal.  First, the Gaithers argued an implied easement arose from the previous common ownership of the properties that allowed them to use the septic system on the Heatley property.  Second, they claimed no duty to maintain or repair the portions of the septic system on the Heatley property prior to the system's discovery on October 30, 2013.

---

[2] Mrs. Heatley died during the pendency of this litigation, and her estate was substituted as plaintiff.

[3] David Gaither was the chairman/CEO of two closely-held companies, Gaither's Inc. and Generations-Gaither's Inc.  In March 2013, Gaither's Inc. took over operations of Skylar House.

Although not expressed in their motion, the Gaithers also argued that they did not breach any duty of care to the Heatleys after October 30 because they promptly removed the accumulated waste in the tank and stopped using it. Mr. Campbell stated in his affidavit accompanying the motion for summary judgment:

> Shortly after November 4, 2013, [the date the tank was emptied,] when it appeared that Unknown Tank was attached to Skylar House, my department determined which Skylar House facilities were served by that line and those facilities were closed and not used by residents or employees until the TDEC approved design was installed. To my knowledge, that stopped the flow of water to Unknown Tank. The remaining bathrooms on the Known Tank of Skylar House served the residents and staff of Skylar House.

The Heatleys did not dispute the evidence of an implied easement or that the Gaithers were unaware of the tank's existence before October 30, 2013.[4] But they maintained that the Gaithers breached their duty of care by continuing to use the septic system on the Heatley property. In an unsworn declaration, Mr. Heatley claimed, based on his personal observations, that the Gaithers "continued to use the septic tank for a period of time after they initially emptied it and it now has 1,000 gallons of . . . waste in it which is leaking out every time it rains."[5]

At the same time, the Heatleys moved to amend their complaint. Based on substantially the same facts, the proposed second amended complaint added claims for gross negligence, nuisance, and continuing trespass.

## C.

The chancery court granted summary judgment to the Gaithers on all claims and denied the Heatleys' motion to amend the complaint. The court determined that the septic tank was lawfully on the Heatley property, having been installed when the two properties were under common ownership. And the court concluded that the Gaithers had no duty to maintain or repair the unknown septic tank before it was discovered.

The court also found that it was undisputed that, once they learned about the second tank, the Gaithers promptly emptied it, stopped using the affected facilities, and

---

[4] The Heatleys conceded that the Gaithers were entitled to summary judgment on the negligence per se claim.

[5] The Gaithers objected to Mr. Heatley's declaration, arguing, among other things, that Mr. Heatley had no factual basis for his claim of continued use.

permanently severed the septic line. The court rejected Mr. Heatley's claim that the Gaithers refilled the tank after it was pumped, stating "there is no proof in the record to support [Mr. Heatley's] claim that the tank was refilled after that because the undisputed proof reflects that the line to the tank was severed and sealed." Based on the undisputed proof that the connection had been permanently severed, the court concluded that the Gaithers were entitled to a judgment as a matter of law on both trespass and negligence.

## II.

### A.

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The party moving for summary judgment has "the burden of persuading the court that no genuine and material factual issues exist and that it is, therefore, entitled to judgment as a matter of law." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). If the moving party satisfies its burden, "the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial." *Id.*

In this case, the party moving for summary judgment does not bear the burden of proof at trial. Consequently, "the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015), *cert. denied*, 136 S. Ct. 2452 (2016). Satisfying this burden requires more than a "conclusory assertion that summary judgment is appropriate," rather the movant must set forth specific material facts as to which the movant contends there is no dispute. *Id.*

If a motion for summary judgment is properly supported, the nonmoving party must then come forward with something more than the allegations or denials of its pleadings. *Id.* at 265. The nonmoving party must "by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' at the summary judgment stage 'showing that there is a genuine issue for trial.'" *Id.* (quoting Tenn. R. Civ. P. 56.06).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. Accordingly, we must review the record de novo and make a fresh determination of

whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763.

B.

1. Negligence

A negligence claim requires proof of five elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). On appeal, the Heatleys do not challenge the trial court's ruling that the Gaithers had no duty to repair or maintain the septic system on the Heatley property before October 30, 2013. But they argue that after October 30, the Gaithers had a duty to "use [the Heatley tank] safely, maintain it, and to protect the Heatleys' property from . . . harm."

Based on its review of the evidence on summary judgment, the trial court concluded that the Heatleys could not establish causation because any wastewater on the Heatley property could not have originated from Skylar House. Upon learning about the tank on the Heatley property, the Gaithers removed the accumulated waste and affirmatively stopped the flow of sewage. The Heatleys point to Mr. Heatley's unsworn declaration as proof that the Gaithers continued to use the septic system after it was emptied. But we need not reach the issue of the sufficiency of the non-moving party's opposing evidence because we conclude that the moving party failed to affirmatively negate causation. *See Helyukh v. Buddy Head Livestock & Trucking, Inc.*, No. W2015-01354-COA-R3-CV, 2017 WL 1483303, at *5 (Tenn. Ct. App. Apr. 24, 2017), *perm. app. denied*, (Tenn. Aug. 21, 2017).

The evidence on summary judgment shows that, when the Heatley tank was discovered, sewage was actively flowing from Skylar House to the Heatley property. Mr. Campbell arranged to have any accumulated waste in the Heatley tank removed on November 4, 2013. And it is undisputed that the line was permanently disconnected on or around February 21, 2014. The trial court found that the Gaither defendants also stopped using the affected facilities during this time period. But Mr. Campbell's affidavit indicates that his department did not close the affected facilities until **shortly after** November 4. A reasonable juror could find that sewage from Skylar House continued to flow onto the Heatley property for at least a short period after the tank was emptied.

Viewing the evidence in the light most favorable to the non-moving party, we cannot say that a reasonable person could reach only one conclusion. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). Because the Gaithers did not affirmatively negate an essential element of the negligence claim, the trial court erred in granting

6

summary judgment on negligence. So we reverse that portion of the trial court's decision.

2. Trespass

But we affirm the trial court's grant of summary judgment on the Heatleys' trespass claim. Trespass protects a landowner's right to exclusive possession. *Morrison v. Smith*, 757 S.W.2d 678, 681 (Tenn. Ct. App. 1988). Any unauthorized entry upon the property of another is trespass. *Id.*; *Rector v. Halliburton*, No. M1999-02802-COA-R3-CV, 2003 WL 535924, at *6 (Tenn. Ct. App. Feb. 26, 2003). But an easement holder is authorized to enter and use another's property for a specific purpose. *Hall v. Pippin*, 984 S.W.2d 617, 620 (Tenn. Ct. App. 1998). The right of the easement holder to use the easement outweighs the landowner's right to exclusive possession. *Cox v. E. Tenn. Nat. Gas Co.*, 136 S.W.3d 626, 627-28 (Tenn. Ct. App. 2003).

It is undisputed that an easement to use the septic system arose by implication from the previous common ownership. *See Johnson v. Headrick*, 237 S.W.2d 567, 569-70 (Tenn. Ct. App. 1948) (describing the essential elements to create an easement by implication from common ownership). The Gaither property, the dominant tenement, benefitted from using the septic system on the Heatley property, the servient tenement. *See Pevear v. Hunt*, 924 S.W.2d 114, 116 (Tenn. Ct. App. 1996) (explaining the relationships in an easement appurtenant). This was an easement appurtenant; it ran with the land. *See Newman v. Woodard*, 288 S.W.3d 862, 865 (Tenn. Ct. App. 2008). The easement bound the Heatleys even though they purchased their property without knowledge of the easement. *See Barrett v. Hill*, No. 01A01-9806-CV-00295, 1999 WL 802642, at *4-5 (Tenn. Ct. App. Oct. 7, 1999) (concluding that easement for use of sewer line was binding on subsequent purchaser of servient tenement without knowledge).

Even if the Gaithers continued to use the septic system after October 30, their use, as a matter of law, does not constitute trespass. *See Rector*, 2003 WL 535924, at *6 (concluding that plaintiff failed to prove trespass because defendant's use of his property was "pursuant to a legally-recognized property interest"); *see also* RESTATEMENT (SECOND) OF TORTS § 158 cmt. e (AM. LAW INST. 1965) ("Conduct which would otherwise constitute a trespass is not a trespass if it is privileged."). An easement holder only becomes a trespasser when the holder's use of the servient tenement is inconsistent with the original purpose of the easement. *See Adams v. Winnett*, 156 S.W.2d 353, 357 (Tenn. Ct. App. 1941). The easement holder cannot unilaterally change or expand the easement such that the burden on the servient tenement is materially increased or a new or additional burden is imposed. *Id.*

Here, the original purpose of the easement was to dispose of sewage from the Malone house. The Heatleys do not allege that the use of the easement changed. Rather, they contend that otherwise privileged conduct became trespass after the septic tank or

7

the field lines on their property started leaking.[6]  While continued use of the septic system under these facts could be negligence, it is not trespass.  *See Rector*, 2003 WL 535924, at *6; c*f. Humphries v. Minbiole*, No. M2011-00008-COA-R3-CV, 2012 WL 5466085, at *5 (Tenn. Ct. App. Nov. 8, 2012) (concluding that installation of private water line was inconsistent with easement for "highway purposes"); *Burchfiel v. Gatlinburg Airport Auth.*, No. E2005-02023-COA-R3-CV, 2006 WL 3421282, at *4 (Tenn. Ct. App. Nov. 28, 2006) (concluding that construction of a sign advertising a museum was inconsistent with easement specifically granted for ingress and egress); *McCammon v. Meredity*, 830 S.W.2d 577, 580 (Tenn. Ct. App. 1991) ("The dominant owner himself becomes a trespasser if he uses the easement to access property other than the dominant estate.").

We conclude that the Heatleys cannot establish a claim for trespass under the undisputed facts.  The Gaithers had an enforceable right to use the septic tank on the Heatley property both before and after October 30, 2013.

C.

The Heatleys also appeal the trial court's denial of their motion to amend the complaint.  We will not reverse a trial court's denial of a motion to amend the pleadings absent an abuse of discretion.  *Pratcher v. Methodist Healthcare Memphis Hosps.*, 407 S.W.3d 727, 741 (Tenn. 2013).  An abuse of discretion occurs when a court "causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence."  *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

After a responsive pleading has been filed, a plaintiff cannot amend the complaint without the written consent of the defendant or permission from the court.  *See* Tenn. R. Civ. P. 15.01.  Permission to amend "shall be freely given when justice so requires."  *Id.*  But court approval is not automatic.  Our courts will not grant a motion to amend without considering a variety of factors, including "[u]ndue delay in filing; lack of notice to the opposing party; bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment."  *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 374 (Tenn. 2007) (alteration in original) (quoting *Merriman v. Smith*, 599 S.W.2d 548, 559 (Tenn. Ct. App. 1979)).

---

[6] We are unpersuaded by the Heatleys' argument that the wastewater leaking out of the tank is actionable as water trespass.  Typically, water trespass cases involve some action by the defendant to alter the natural flow of surface water to the detriment of the plaintiff's property.  *See Ray v. Neff*, No. M2016-02217-COA-R3-CV, 2018 WL 3493158, at *1 (Tenn. Ct. App. July 20, 2018) (describing factual basis of water trespass suit).  None of the cases cited by the Heatleys in support of this argument involve an easement.  And, as discussed above, the Gaithers had a legal right to use the septic system.

All of the claims in the proposed second amended complaint were premised on the Gaithers' continued use of the septic system. The trial court determined that the proposed amendment was futile because it was undisputed that the Gaithers stopped using the system. In light of our conclusion that a reasonable juror could determine that the Gaithers continued to use the system for a short period after the tank was emptied, we also vacate the court's denial of the motion to amend. On remand, the court should reconsider the Heatleys' motion to amend in light of the relevant factors.

## III.

Because the Gaithers had an enforceable right to use the septic system on the Heatley property, their alleged continued use after October 30, 2013, did not constitute trespass. So we affirm the trial court's grant of summary judgment on trespass. But we reverse the court's grant of summary judgment on negligence because the Gaithers failed to affirmatively negate an essential element of the negligence claim. Based on our partial reversal of the summary judgment decision, we also vacate the court's denial of the motion to amend the complaint. This matter is remanded for further proceedings consistent with this opinion.

_____
W. NEAL MCBRAYER, JUDGE